U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2013 APR -4  PM 2: 02

CLERK

BY_____
DEPUTY CLERK

WAYNE BURWELL,                                          )
                                                       )
     Plaintiff,                                        )
                                                       )
     v.                                                )        Case No. 5:12-cv-166
                                                       )
HARTFORD POLICE OFFICER FREDRICK                       )
PEYTON in his individual capacity and as an            )
employee of the Town of Hartford, HARTFORD             )
POLICE OFFICER SCOTT MOODY in his                      )
individual capacity and as an employee of the Town     )
of Hartford, HARTFORD POLICE OFFICER                   )
KRISTINNAH ADAMS in her individual capacity            )
and as an employee of the Town of Hartford,            )
HARTFORD POLICE CHIEF GLENN CUTTING                    )
in his individual capacity, and TOWN OF                )
HARTFORD,                                              )
                                                       )
     Defendants.                                       )

**OPINION AND ORDER GRANTING WITHOUT PREJUDICE
MOTION TO DISMISS COUNT FIVE AND COUNT SIX
FILED BY DEFENDANTS FREDRICK PEYTON, SCOTT MOODY,
AND KRISTINNAH ADAMS**
(Doc. 16)

This matter comes before the court on the motion to dismiss counts five and six of
Plaintiff Wayne Burwell's Amended Complaint filed by Defendants Fredrick Peyton,
Scott Moody, and Kristinnah Adams (collectively "the Defendant Officers"). (Doc. 16.)
In counts five and six, respectively, Mr. Burwell alleges that Defendant Officers
discriminated against him "on account of his race and color" in violation of 42 U.S.C.
§ 1983 and 42 U.S.C. § 1981. (Doc. 17.) The Defendant Officers contend that Mr.
Burwell has alleged no facts that would support a plausible inference of intentional race
discrimination. Mr. Burwell opposes the motion. The court heard oral argument on
December 10, 2012.

Mr. Burwell is represented by Robin C. Curtiss, Esq.  The Defendant Officers are represented by James F. Carroll, Esq.  Defendants Town of Hartford and Glenn Cutting, who take no position on the pending motion, are represented by Joseph A. Farnham, Esq. and Nancy G. Sheahan, Esq.

For the reasons set forth below, the court hereby GRANTS without prejudice the Defendant Officers' motion to dismiss.

## I.      Factual and Procedural Background.

The relevant facts are drawn from Mr. Burwell's Amended Complaint and from a video of the incident on May 29, 2010, which was attached to the Amended Complaint as an exhibit.  On the date of the incident, the Defendant Officers, all police officers for the Town of Hartford, Vermont, responded to a call at Mr. Burwell's residence at Stony Creek Condominiums.  Mr. Burwell is a thirty-six-year-old African American male.  At all relevant times, he suffered from insulinoma, which is a tumor in the pancreas that unpredictably produces excess amounts of insulin and which may cause a person's blood sugar level to drop and the person to become comatose.

On the date in question, Holly Thomas, an employee of a house cleaning business hired by Mr. Burwell, entered Mr. Burwell's residence with a co-worker to perform a scheduled cleaning of his home.  Ms. Thomas had never met Mr. Burwell and did not know what he looked like.  When Ms. Thomas entered the residence, she noticed that it "looked disheveled." (Doc. 17 at ¶ 19.)  According to her statements in the video, she extinguished a small fire, and she then discovered Mr. Burwell sitting naked on the toilet. Ms. Thomas did not know that Mr. Burwell had suffered from an attack of insulinoma and had become comatose.  Ms. Thomas apparently did not investigate further, and, in response, she called 911 and was transferred to Hartford police department's dispatch. Ms. Thomas stated to Hartford dispatch, among other things, that "there was somebody sitting on the toilet in there and we don't know if it's the person that owns the house that you know maybe he's sick or something or you know what's going on[,]" that the person inside was African American, and that "I've never seen the guy that lives here." *Id.* at ¶ 20.

2

While Ms. Thomas was on the phone with Hartford dispatch, Jennifer Dean, the owner of the cleaning business, arrived at the scene and spoke with Hartford dispatch. She stated that she would like to go into the house to investigate and stated that "I don't even know why they called you," but Hartford dispatch told her not to enter the premises. *Id.* at ¶ 21.

Shortly thereafter, the Defendant Officers arrived at Mr. Burwell's residence and observed smoke coming from inside the house. They spoke briefly with Ms. Thomas, Ms. Dean, and Mr. Burwell's neighbor, Robert McKaig. As the Detective Officers were about to enter the premises, Mr. McKaig informed them that, weeks earlier, Mr. Burwell had suffered from a medical emergency and was found unconscious upstairs in his home. According to the Amended Complaint, Officer Moody "secured an assault rifle from his vehicle" and stood inside the door, while Officers Adams and Peyton "drew their sidearms" and entered the home. *Id.* at ¶ 25. Officers Adams and Peyton found cooked food on the stove and water running in the kitchen sink. After going upstairs, they saw Mr. Burwell, still naked, sitting on the toilet.

Upon seeing Mr. Burwell, Officers Adams and Peyton called out commands to him. They pointed their firearms at him, and Officer Peyton yelled "Show your fucking hands up or I'll shoot you motherfucker." *Id.* at ¶ 28. When Mr. Burwell did not respond, Officers Adams and Peyton continued to shout at him to show his hands. During this time, Officers Adams and Peyton were able to ascertain that Mr. Burwell's hands were empty. Officer Peyton then holstered his weapon and proceeded to spray Mr. Burwell twice with a can of O.C. spray.[1] When Mr. Burwell attempted to move in order to avoid the spray, Officer Adams allegedly restrained and handcuffed him while Officer Peyton took out his police baton and allegedly struck Mr. Burwell "at least 5 to 7 times" with the baton. *Id.* at ¶ 33. In a later conversation recorded on the video of the incident, Officers Adams and Peyton described what happened inside Mr. Burwell's residence as a "fight," and Officer Peyton stated, "I hit him quite a few times. He wouldn't submit."

---

[1] O.C. spray is also known as "pepper spray."

When Officer Moody left the apartment, he learned from Ms. Dean that Mr. Burwell was the homeowner and suffered from a medical condition. He returned inside and informed Officers Adams and Peyton that Mr. Burwell "lived on the premises." *Id.* at ¶ 34. In response, Officers Adams and Peyton allegedly finished handcuffing Mr. Burwell, draped him in a blanket, and brought him outside.[2] With the exception of the blanket, he remained naked and "exposed to neighbors who had now gathered at the scene." *Id.* at ¶ 35. When two other police officers arrived, the Defendant Officers attempted to remove the O.C. spray from Mr. Burwell's eyes with water from a neighbor's hose. According to the Amended Complaint, Mr. Burwell was then taken to a nearby hospital "where he was treated for injuries he sustained during this incident." *Id.* at ¶ 37.

At all relevant times, Hartford "had written Rules concerning the Use of Force by Hartford police officers." *Id.* at ¶ 41. According to the Amended Complaint, the Use of Force rules state that "the objective of any use of force is to overcome the suspect's resistance with the minimum force necessary." *Id.* The Use of Force rules also set out a requirement "that O.C. spray be used only to subdue an attacker or violent suspect and that O.C. spray shall not be used on a person in a confinement except under extreme circumstances." *Id.*

In count five, Mr. Burwell alleges that Officers Peyton, Adams, and Moody discriminated against him because he was African American in violation of his right to equal protection under the Fourteenth Amendment. In support of this claim, Mr. Burwell asserts that the decisions by Officers Peyton, Adams, and Moody to investigate and proceed with the seizure of him were motivated by racial animus and a discriminatory purpose. Mr. Burwell further alleges, in count six, that Officers Peyton, Adams, and Moody intentionally discriminated against him based on his race and deprived him of his rights under 42 U.S.C. § 1981(a) "to the full and equal benefit of all laws and

---

[2] While exiting the residence, the neighbor, Mr. McKaig, attempted to speak with officers to inquire if Mr. Burwell was "okay." Officer Adams instructed Mr. McKaig to "back down" and "back off," and she later threatened to arrest him if he did not return to his home.

proceedings for the security of persons and property." He alleges that Officers Peyton, Adams, and Moody were aware of his race at all relevant times and that the decisions by Officers Peyton, Adams, and Moody to investigate and proceed with the seizure of him were motivated by racial animus and were made with a discriminatory purpose.

## II.    Legal Analysis and Conclusions.

### A.    Standard of Review.

When assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a court assumes "all well-pleaded, nonconclusory factual allegations in the complaint to be true[,]" *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), and determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court also draws "all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal citation and quotation marks omitted). The court will not credit "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[When] allegations set out in the complaint are contradicted by other matters asserted or by materials attached to or incorporated by reference in the complaint, the court is not obliged to credit the allegations in the complaint." *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 215 (S.D.N.Y. 2008) (citing *Brown v. N.Y.C. Hous. Auth.*, 2006 WL 1378599, at *1-2 (S.D.N.Y. May 17, 2006)); *see also Kelly v. Yorktown Police Dep't*, 2006 WL 3316183, at *6 (S.D.N.Y. Nov. 13, 2006) (dismissing a false imprisonment claim under Fed. R. Civ. P. 12(b)(6) where video referenced in the complaint showed that security officers had probable cause to believe plaintiff had committed a crime).

To survive a motion to dismiss, a claim must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555-56. "Asking for plausible grounds to infer" discrimination "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of discrimination. *Twombly*, 550 U.S. at 556.

B.      **Whether Plaintiff Has Plausibly Pled that the Defendant Officers Engaged in Intentional Race Discrimination.**

The Defendant Officers move to dismiss Mr. Burwell's § 1983 equal protection and § 1981 equal rights claims, both of which are premised on allegations of racial discrimination. They argue that Mr. Burwell has failed to allege facts sufficient to raise his claims of racial discrimination "above the speculative level," *Twombly*, 550 U.S. at 555, because he does not allege any facts which evidence intentional discrimination. Mr. Burwell argues that the actions of the Defendant Officers demonstrate "a clear intent to discriminate on the basis of race" because, after being informed that Mr. Burwell was African American and even after being informed that the situation could have been a medical emergency, the Defendant Officers proceeded in a manner that defies a racially-neutral explanation and therefore creates a plausible inference of racial animus and a discriminatory purpose. (Doc. 21 at 4-5, 5-7.)

"To state a race-based [§ 1983] claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000). A plaintiff may "plead intentional discrimination" by "identify[ing] a facially neutral law or policy that has been applied in an intentionally discriminatory manner." *Id.* In some contexts, plaintiffs bringing equal protection claims are required "to plead

6

the existence of a similarly situated group that was treated differently." *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) (citations and internal quotation marks omitted). However, a plaintiff who "alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner . . . is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection." *Id.* at 110.[3] Under *Pyke*, a plaintiff nonetheless retains the burden of demonstrating that the defendant made a facially neutral decision in an intentionally discriminatory race-based manner. *Id.* ("Plaintiffs will, of course, be required to substantiate their claim that the denial of police protection was motivated by racial discrimination.").

Similarly, "[t]o establish a claim under 42 U.S.C. § 1981, plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of [§ 1981's] enumerated activities[,]" *Brown*, 221 F.3d at 339, including

---

[3] The Defendant Officers argue that "the *Pyke* framework is neither properly alleged in the Amended Complaint nor is it the appropriate equal protection framework to apply in a challenge premised upon a selective investigation." (Doc. 20 at 3.) Mr. Burwell was not required to "allege" the "*Pyke* framework" in his Amended Complaint because "[a] complaint need not set out the correct legal theory on which the claim is based, so long as the complaint provides full notice of the circumstances giving rise to the plaintiff's claim." *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 530 n.3 (2d Cir. 2006); *see also Topever Corp. v. ENE Group LLC*, 2013 WL 822378, at *4 (S.D.N.Y. Mar. 6, 2013) (refusing to dismiss claim when "[p]laintiff has alleged sufficient facts for at least one successor liability exception to be applicable," even though the words "successor in interest" are not in the complaint); *Sabilia v. Richmond*, 2011 WL 7091353, at *26 (S.D.N.Y. Oct. 26, 2011) (explaining that failure to label claims as breach of contract was not fatal to the pleading because the court "must look to the factual allegations of the complaint as defining the nature of the claim rather [than] depend upon the legal labels affixed to those factual allegations"). Moreover, the Amended Complaint does not allege selective prosecution, which requires a plaintiff "show that similarly situated individuals of a different race were not prosecuted," *Pyke*, 258 F.3d at 109 (internal quotation marks omitted), but rather alleges that the Defendant Officers' "decision how to investigate and proceed" under the neutral policies that govern the use of force "was motivated by racial animus and a discriminatory purpose." (Doc. 17 ¶¶ 72, 79.) The Second Circuit made clear in *Pyke* that "there are 'several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause,'" including identification of "'a facially neutral law or policy that has been applied in an intentionally discriminatory manner.'" *Id.* (quoting *Brown*, 221 F.3d at 337).

the right "to the full and equal benefit of all laws and proceedings for the security of persons and property." *Id.* (quoting 42 U.S.C § 1981(a)). The Second Circuit has held that "we have no difficulty categorizing either a criminal investigation or the restoration of peace as a 'proceeding for the security of persons and property' at the Rule 12(b)(6) stage." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003). To allege racial discrimination depriving a plaintiff of "the full and equal benefit" of a law or proceeding, "plaintiffs must meet the same pleading standard for . . . § 1981 claims as for . . . § 1983 claims under the Equal Protection Clause[.]" *Brown*, 221 F.3d at 339. A plaintiff must therefore allege "that the defendant discriminated against him on the basis of race, that that discrimination was intentional, and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001) (internal citations omitted); *see also Anderson v. City of New York*, 817 F. Supp. 2d 77, 95 (E.D.N.Y. 2011) ("[T]he defendants' discrimination 'must have been intentional and purposeful' and the plaintiff must make a 'fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race'") (quoting *Carson v. Lewis*, 35 F. Supp. 2d 250, 269 (E.D.N.Y. 1999)).

Here, Mr. Burwell has alleged that he is African American and that he was deprived the full and equal benefit of Hartford's Use of Force rules with respect to the use of force and O.C. spray because he alleges the rules were applied in a discriminatory manner. Hartford Use of Force rules are facially neutral and "for the security of persons," so they may form the basis of a § 1983 or a § 1981 claim, or both. Thus, the sufficiency of both Mr. Burwell's § 1983 and § 1981 claims turns on whether he has alleged sufficient facts to state a plausible claim that the Defendant Officers intentionally discriminated against him based on his race.

Mr. Burwell has alleged that the Defendant Officers were aware that he was African American and their inappropriate response to his medical condition occurred because of this knowledge. Before the Defendant Officers entered his residence, dispatch advised that the complaining witness had seen an African American male in the home. The Defendant Officers were also aware that the homeowner had suffered a medical

emergency in the weeks prior to the incident and had been found unconscious upstairs in his home. Additionally, Ms. Thomas's report to the Hartford dispatch specifically stated that the person she observed may have been sick and that she did not know whether he was the owner of the home. Mr. Burwell further alleges that, despite this knowledge, the Defendant Officers' immediate reaction to seeing Mr. Burwell naked and helpless was to yell "Show your fucking hands up or I'll shoot you motherfucker." (Doc. 17 at ¶ 28.) After Mr. Burwell did not respond, the Defendant Officers continued to shout at him and sprayed him with O.C. spray, arguably in violation of the Use of Force rule limiting the permissible use of O.C. spray in confined spaces to violent persons or extreme circumstances. Thereafter, the Defendant Officers allegedly handcuffed Mr. Burwell and beat him with a police baton.

Despite alleging "facts consistent with a discrimination claim[,]" Mr. Burwell's claim "nevertheless 'stops short of the line between possibility and plausibility of entitlement to relief,' because plaintiff[] do[es] not allege any facts supporting an inference of racial animus." *Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Such facts could include "allegations of overtly racially-motivated misconduct, such as the use of racial slurs, . . . that other members of the protected class suffered similar mistreatment, [or]. . . treat[ment] less favorabl[e] than similarly situated [persons] who were not members of the protected class." *Jianjun Xie v. Oakland Unified Sch. Dist.*, 2013 WL 812425, *4 (N.D. Cal. Mar. 5, 2013).[4]

---

[4] *Compare Barkley v. Olympia Mortgage Co.*, 2007 WL 2437810, at *11 (E.D.N.Y. Aug. 22, 2007) (finding plaintiffs' racial discrimination claims plausible when they alleged that advertising featured minority consumers; advertisements were placed in newspapers serving minority populations, but not white populations; minorities were only shown housing in minority neighborhoods; and defendants used race-conscious outreach strategies, such as a minority salesman claiming to "take[] care of 'his own'"), *with Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 297-98 (S.D.N.Y. 2011) (granting motion to dismiss, the court explained that despite allegations that certain actions were targeted at minorities, the plaintiffs "do not specifically allege that [d]efendants took these purportedly discriminatory actions, or intended to take these actions, *because* [p]laintiffs were African-American. Nor do [p]laintiffs provide any facts in support of their contention that intentional discrimination occurred").

Although a close question, no court has apparently held that mere knowledge of a person's race, coupled with an arguably excessive response, will suffice. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 102 (2d Cir. 2001) ("Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it."); *Bishop v. Toys "R" US-NY, LLC*, 2009 WL 440434, at *6 (S.D.N.Y. Feb. 19, 2009) ("Hostile conduct may support an inference of discrimination, but is not alone sufficient."). "Because the majority of plaintiff's allegations do 'little more than cite to [his] mistreatment and ask the court to conclude that it must have been related to [his] race' . . . the allegations in the complaint do not plausibly give rise to a claim for discriminatory intent." *See Garzon v. Jofaz Transp., Inc.*, 2013 WL 783088, at *3 (E.D.N.Y. Mar. 1, 2013) (quoting *Lizardo*, 270 F.3d at 104).

"[I]t is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened because the person is a member of that racial group." *Williams v. Calderoni*, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012). Even though there is a reasonable inference that the Defendant Officers were aware of Mr. Burwell's race as they approached the scene and that the Defendant Officers were clearly aware of his race once they entered his residence, there are no factual allegations that make it plausible that such knowledge of his race was a motivating factor in their actions. *See Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115 (W.D.N.Y. 2010) (dismissing discrimination claims when there were no allegations that defendants "made any discriminatory comments" or "engaged in any overt discriminatory conduct toward the plaintiff" and there were no allegations that plaintiff was treated differently than others who were similarly situated). "The mere fact that plaintiff and defendants are of different races, standing alone, is simply insufficient as a factual pleading to allege racially motivated discrimination[.]" *Johnson v. City of New York*, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009).

Because Mr. Burwell's factual allegations do not give rise to an inference of discrimination strong enough to nudge his claims "'across the line from conceivable to

plausible,'" *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570), the Defendant Officers' motion to dismiss counts five and six of Mr. Burwell's Amended Complaint is GRANTED without prejudice.[5]

## CONCLUSION

For the reasons stated above, the court hereby GRANTS WITHOUT PREJUDICE the Defendant Officers' motion to dismiss counts five and six of the Amended Complaint. (Doc. 16.)

SO ORDERED.

Dated at Rutland, in the District of Vermont, this ___ day of April, 2013.

Christina Reiss, Chief Judge
United States District Court

---

[5] In the event that further discovery on Mr. Burwell's remaining claims leads to evidence of discrimination, Mr. Burwell may seek leave to amend his pleadings.